IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

INTENT PERFORMANCE LLC                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 2:23-cv-86-TBM-RPM

INTENT SPORTS & FITNESS, LLC, *et al.*                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

  This case involves the disgruntled members, former members, business associates, and employees of two related limited liability companies: Intent Performance LLC and Intent Sports & Fitness, LLC. Intent Performance alleges that its member, David Parkinson,[1] and his wife Bailey Parkinson, who both used to be members of Intent Sports & Fitness, were wrongfully ousted from Intent Sports & Fitness in a scheme to harm Intent Performance.

  Defendants Intent Sports & Fitness and Marcus Moore, who is a member of Intent Sports & Fitness, have now moved to send this case to arbitration [49] pursuant to an arbitration agreement contained in the Intent Sports & Fitness Operating Agreement. Because no claim in this case is within the scope of that arbitration clause, the Court denies the motion. The Court also denies the Motion to Compel Arbitration [50] filed by Defendant Jackson, Tullos & Rogers, PLLC because it seeks, as a non-signatory, to arbitrate claims brought by Intent Performance, another non-signatory. Additionally, the Court grants Jackson, Tullos & Rogers' Partial Motion to Dismiss [52], as Intent Performance does not state a claim against Jackson, Tullos & Rogers for aiding-and-abetting or conspiracy under the Computer Fraud and Abuse Act or the Defense of Trade Secrets Act, for tortious interference with contracts and business expectancies, or for civil conspiracy. The Court

---

[1] According to the operative Complaint, Intent Performance has two members: Parkinson and Chase Stewart, who is not a party to this action. [33], p. 3.

further grants in part Intent Sports & Fitness' Motion to Amend [75] because the amendment of its slander and tortious interference with business relations counterclaims is not futile. But because amendment of the libel counterclaim is futile, the Court does grant Intent Performance and David and Bailey Parkinson's Motion to Dismiss [56] in part, dismissing the libel counterclaim with prejudice.

## I. BACKGROUND

Intent Performance provides batting and pitching lessons to baseball players through member David Parkinson. He played baseball at the University of Mississippi and currently plays professional baseball. [33], p. 2. Until May 2023, Parkinson and his wife, Bailey, were also members of Intent Sports & Fitness. *Id.* The Parkinsons allege that they were convinced to give up their shares in Intent Sports & Fitness to allow that company to focus exclusively on operating its gym, while Intent Performance would focus exclusively on its baseball programs. *Id.* According to the Parkinsons, however, this maneuver was actually part of a scheme to "eject [Intent] Performance from its facility, steal its trade secrets, appropriate its business as their own, and destroy [Intent] Performance . . ." *Id.*

As a result, Intent Performance sued Intent Sports & Fitness, Marcus Moore, Briar Russell, Adam Bassett, Katie Beth Sumrall, and Jackson, Tullos & Rogers. Moore and Russell are members of Intent Sports & Fitness, while Bassett and Sumrall are employees. [33], p. 4. Jackson, Tullos & Rogers was Intent Sports & Fitness' counsel, until the Magistrate Judge disqualified them on March 26, 2024, for, among other reasons, having a conflict of interest as former counsel for Intent Performance. *See* [26].

In its operative Complaint [33], Intent Performance asserts claims for (1) theft of trade secrets, (2) unauthorized computer access and theft, (3) aiding-and-abetting or conspiracy to

commit unauthorized computer access and theft, (4) aiding-and-abetting or conspiracy to commit theft of trade secrets, (5) misappropriation of trade secrets, (6) tortious interference with contracts and business expectancies, (7) conversion, (8) fraud and fraudulent inducement, (9) breach of contract and the covenant of good faith and fair dealing, (10) civil conspiracy, (11) unjust enrichment/accounting/constructive trust/disgorgement, and (12) legal malpractice. [33], pps. 16-31.

Intent Sports & Fitness, Marcus Moore, and Katie Beth Sumrall assert counterclaims for (1) breach of fiduciary duty, (2) breach of the Operating Agreement, (3) bad faith, (4) invasion of privacy, (5) trespass to chattels and conversion, (6) tortious interference with contract, (7) tortious interference with business relations, (8) and (9) breach of contract, (10) slander, and (11) libel. [54], pps. 22-33. The Defendants and Third-Party Plaintiffs bring these claims against the Parkinsons and Lora Davis—who is an employee of Intent Sports & Fitness, the mother of Bailey Parkinson, and an alleged business associate of the Parkinsons. *Id.* at p. 20. The counterclaims arise out of the fallout from the Parkinsons' exit from Intent Sports & Fitness, which the Defendants and Third-Party Plaintiffs allege included, among other things: defamatory statements, the unauthorized access of confidential business information, the breach of rental agreements, and harms to Intent Sports & Fitness' business. [54], pps. 21-22.

## II. MOTIONS TO COMPEL ARBITRATION

Marcus Moore, Briar Russell, and David and Bailey Parkinson, as members of Intent Sports & Fitness, signed an Operating Agreement governing the LLC.[2] [68-1]. That Operating Agreement contains an arbitration clause in which the parties agreed to arbitrate, after good-faith negotiation

---

[2] Lee Ashley Moore also signed the Operating Agreement, though that individual is not, and has not been, a party to this suit.

and mediation, disputes "solely between or among" the LLC members. *Id.* at p. 19. As the Court will further discuss, none of the claims in this case are solely between or among members of Intent Sports & Fitness. As a result, they fall outside of the scope of the parties' arbitration agreement. Accordingly, the Court denies Intent Sports & Fitness and Moore's Motion to Compel Arbitration [49]. Next, Jackson, Tullos & Rogers seeks, as a non-signatory to the Operating Agreement, to enforce the arbitration clause under an equitable estoppel theory. Because Intent Performance is also a non-signatory to the Operating Agreement, this Court will not compel two parties to arbitrate under an agreement to which neither was a party. Jackson, Tullos & Rogers' Motion to Compel Arbitration [52] is denied.

## A. Standard of Review

Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ." 9 U.S.C. § 2. The Federal Arbitration Act ("FAA") gives arbitration agreements the same force and effect as other contracts. *Id*. And district courts have the authority to decide whether parties have agreed to arbitrate under a written agreement. 9 U.S.C. § 4. "To determine whether the parties have agreed to arbitrate [a] claim, [courts] ask '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196 (5th Cir. 2015) (citing *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

In resolving the first prong of the FAA analysis, the Court questions "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis removed). Answering that question "turns on state contract law." *Id.*

at 202 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)); *see Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (applying Mississippi contract law to determine whether the parties created a valid contracted to arbitrate); *Seal v. S. Energy Homes, Inc.*, No. 1:20-cv-190-HSO-JCG, 2021 WL 1427671, at *4 (S.D. Miss. Jan. 26, 2021) (same).

While a "strong federal policy favoring arbitration applies to the scope of an arbitration agreement, 'the policy does not apply to the initial determination whether there is a valid agreement to arbitrate.'" *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 197 (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Instead, "these are separate inquiries." *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 197. Thus, the Court must first decide whether, under Mississippi law, there is a valid arbitration agreement between the parties, and only if it can answer that question in the affirmative, may the Court proceed to the second inquiry regarding scope. *Id.*

## B. Intent Sports & Fitness and Marcus Moore's Motion to Compel Arbitration [49]

Defendants Intent Sports & Fitness and Marcus Moore seek to arbitrate this dispute pursuant to an arbitration clause found within the Intent Sports & Fitness Operating Agreement. Intent Performance, David Parkinson, Bailey Parkinson, and Lora Davis ("Plaintiff and Third-Party Defendants") oppose the motion to compel arbitration on two grounds and argue that: (1) the Defendants waived the right to arbitrate by failing to timely assert that right and by pleading counterclaims with a jury demand in their answers, and (2) the arbitration clause does not apply to this dispute. The Court will first address whether the Defendants waived their right to arbitration.

1.  **Waiver**

Like any contractual right, the right to arbitration may be waived. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). But, "[t]here is a strong presumption against waiver of arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). "A party waives its right to arbitration only when participation in the litigation has been so substantial that compelling arbitration would prejudice the other party." *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 700 (5th Cir. 2003). A court asks whether the party seeking arbitration has substantially invoked the judicial process to the detriment or prejudice of the other party. *Subway*, 169 F.3d at 326. "The substantial-invocation analysis in this case is straightforward. Substantial invocation occurs when a party performs an overt act in court that evinces a desire to resolve the dispute through litigation rather than arbitration." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 266 (5th Cir. 2021) (citation omitted).

Here, the Plaintiff and Third-Party Defendants argue that the Defendants waived their right to arbitrate because they failed to raise it as an affirmative defense in their first few answers and because they asserted counterclaims, which included a jury demand. In making this argument, however, the Plaintiff and Third-Party Defendants have not cited to this Court any specific authority supporting this proposition. A party's failure to initially plead arbitration in an answer is not dispositive of waiver. In fact, the Fifth Circuit has held that parties, which had participated in substantially more litigation than the Defendants have here, still had not waived arbitration. *See Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (movant did not substantially invoke the judicial process and waive its right to arbitration despite removing action to federal court, filing a motion to dismiss, filing a motion to stay proceedings, answering complaint,

asserting a counterclaim, and exchanging Rule 26 discovery); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-77 (5th Cir. 1991) (movant did not invoke the judicial process to a significant extent by serving interrogatories, requesting production of documents, attending a pretrial conference, and waiting thirteen months before seeking to compel arbitration).[3]

Although they did not assert their right to arbitration in their initial Answer [8], Answer to the first amended Complaint [13], or their first Amended Answer [20], the Defendants did raise their right to arbitration in their Answer [48] to the operative Complaint [33], the instant Motion to Compel Arbitration [49], and their Amended Answer [54]. Likewise, the Defendants who filed this Motion—Intent Sports & Fitness and Marcus Moore—have not filed a dispositive motion in this case.[4] And no Defendant has engaged in any discovery. Indeed, this case is stayed [55] pending the outcome of the two Motions to Compel Arbitration [49], [50].

While the Defendants' request for a jury trial "is inconsistent with asserting the right to arbitration, standing alone it does not constitute waiver." *Century 21 Maselle & Assocs., Inc. v. Smith*, 965 So. 2d 1031, 1037 (Miss. 2007). Rather, the request for a jury trial must "delay resolution of the controversy," "add to the expense of litigation," and "substantially invoke the judicial process." *Id.* Besides providing blanket allegations of mounting attorney's fees and unreasonable delay, the

---

[3] *See also Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416, 420-21 (5th Cir. 1985) (movant did not waive right to arbitration by seeking a stay, filing an answer to the complaint, serving interrogatories, requesting production of documents, moving for a protective order, agreeing to a joint motion for continuance, requesting an extension of the discovery period, and waiting eight months before seeking to compel arbitration); *General Guaranty Insurance Company v. New Orleans General Agency, Inc.*, 427 F.2d 924, 927-30 (5th Cir. 1970) (no waiver when moving party, before demanding arbitration, filed answer denying liability and asserting counterclaims, attempted to implead parties, and allowed taking of two depositions).

[4] Defendant Jackson, Tullos & Rogers did file a Partial Motion to Dismiss [52], but that Motion was filed in the alternative. Jackson, Tullos & Rogers only seeks such relief by this court in the event that the Court denies its pending Motion to Compel Arbitration [50]. It is apparent that Jackson, Tullos & Rogers also sought to preserve its arbitration rights in this case.

Plaintiff and Third-Party Defendants "offered no evidentiary basis for [this] court to find detriment or prejudice either by incurred legal expense or procedural delay . . ." *Id.*

For one, the Plaintiff and Third-Party Defendants do not even argue how the jury request itself has delayed this case or raised their costs. Even if the Defendants' failure to initially plead arbitration as an affirmative defense may have delayed this case and increased expenses, Intent Performance is at least partially to blame. Over one year after commencing this litigation, Intent Performance filed a Second Amended Complaint [33]. Moreover, even where the Defendants requested a jury with their counterclaims, this request was made alongside an assertion of arbitration rights. *See* [54], pps. 4-5, 18; [49]. Therefore, the Court finds that, taking into account the strong presumption against waiver, the Defendants evinced an intent to preserve their right to arbitrate.

The Defendants have not waived their right to arbitrate merely by filing responsive pleadings in this case. Absent more, their conduct does not rise to the level of that which the Fifth Circuit has held constitutes a waiver of the right to arbitrate. Accordingly, the Plaintiff and Third-Party Defendants have not met their burden to show a waiver of the right to arbitrate.

### 2. Whether the Parties Agreed to Arbitrate this Dispute

The Court begins its analysis of Intent Sports & Fitness and Marcus Moore's Motion to Compel Arbitration [49] by asking whether, under Mississippi contract law, the parties have a valid agreement to arbitrate. *See Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196 (5th Cir. 2015); *Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019). In looking at the Intent Sports & Fitness Operating Agreement, the plain language of the arbitration clause supports a finding that the members of Intent Sports & Fitness agreed to arbitrate their disputes.

[68-1], p. 19. Indeed, members of the LLC were supposed to first, attempt to resolve any disputes via good-faith negotiation, then, settle such disputes through a non-binding mediation proceeding. *Id.* If those efforts failed, "any unresolved disputes shall be finally settled in accordance with a binding arbitration proceeding." *Id.* Accordingly, it is clear that David Parkinson, Bailey Parkinson, Marcus Moore, and Briar Russell—who all signed the Operating Agreement—agreed to arbitrate disputes contemplated by the Agreement. [68-1], p. 31. Thus, the Court focuses its analysis on whether any of the disputes in this case fall within the scope of the arbitration agreement.

### a. The Court Should Decide Arbitrability

While the first prong of the FAA analysis requires the Court to inquire "whether the parties entered into *any arbitration agreement at all*," the second prong—regarding scope—requires the Court to "determine whether *this claim* is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis original). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Tittle v. Enron Corp.*, 463 F.3d 410, 421 (5th Cir. 2006). The scope of an arbitration agreement is a question of arbitrability, as "the language of the contract [] defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). The Defendants in this case who are seeking to arbitrate argue that "the very question of arbitrability should be decided by the arbitrator." [49], p. 8.

"Ordinarily," however, scope is a "question[] for the court." *Kubala*, 830 F.3d at 201; *see Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998) ("[T]he

question of whether a party can be compelled to arbitrate, as well as the question of what issues a party can be compelled to arbitrate, is an issue for the court rather than the arbitrator to decide."). And "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear[] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)). In the Intent Sports & Fitness Operating Agreement, the parties agreed to arbitrate "Member Disputes" that are unresolved after good-faith negotiation and mediation.[5] A Member Dispute is defined as "any dispute or disagreement *solely* between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management . . ." [68-1], p. 19 (emphasis added).

Nowhere does the Operating Agreement delegate questions of arbitrability. *See id.* at pps. 19-21. It does not mention arbitrability or scope and does not give the arbitrator the authority to decide which disputes between the parties should be arbitrated. *Id.* Accordingly, there is no clear or unmistakable evidence that the Intent Sports & Fitness members agreed to arbitrate arbitrability. This Court should decide that question.

---

[5] The Defendants stipulate that the Operating Agreement made mediation a condition precedent to arbitration, as the Agreement states that the parties "shall first attempt to settle . . . dispute[s] through a non-binding mediation proceeding." [68-1], p. 19. Only if a party is not satisfied with the results of mediation does the Agreement call for a binding arbitration proceeding. *Id.* The Defendants argue, however, that even though mediation was a condition precedent to arbitration, the Plaintiff and Third-Party Defendants have forfeited that condition precedent by filing this lawsuit. [49], p. 7. Regardless, "the issue of whether a condition precedent to arbitration has been satisfied is for the arbitrator to decide, not the Court." *Viking Automatic Sprinkler Co. v. O'Neal Constructors, LLC*, 743 F. Supp. 3d 816, 823 n.7 (S.D. Miss. 2024) (citing *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34-35, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014)); *see Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 (4th Cir. 2015) (holding *BG Grp.* applies when the condition precedent is mandatory mediation); *Home Care Providers of Texas v. Cross*, No. 3:19-cv-1680-N, 2020 WL 1819984, at *3 (N.D. Tex. Apr. 10, 2020) ("While the agreement includes a mediation provision, the Court finds that the issue of whether the condition precedent has been fulfilled is an issue for the arbitrator, not the Court, to decide."). Because none of the claims in this case are arbitrable, the condition precedent is not at issue.

**b. Only Disputes that are "Solely Between or Among" the Members are Arbitrable**

In opposing arbitration, the Plaintiff and Third-Party Defendants ask this Court to take an all-or-nothing approach. They argue that because the world "solely" in the arbitration clause covers only disputes between or among the LLC members themselves, and not a dispute—such as the one underlying this present litigation—that concerns parties who are no longer or were never members of Intent Sports & Fitness, the Court should deny the Motion [49]. [59], p. 9. It is undisputed that this litigation involves parties who were never members of Intent Sports & Fitness, namely Intent Performance, Katie Beth Sumrall, Adam Bassett, Lora Davis, and Jackson, Tullos & Rogers. That has been true from the start, as Katie Beth Sumrall and Adam Bassett were named Defendants in the first Complaint [1]. This case also involves David and Bailey Parkinson, who were but are no longer members of Intent Sports & Fitness.

The arbitration provision's language appears to "sweep[] broadly in scope," making arbitrable those claims "arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management . . ." *Auto Parts Mfg. Mississippi Inc. v. King Const. of Houston, LLC*, 74 F. Supp. 3d 744, 762 (N.D. Miss. 2014), *aff'd sub nom. Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186 (5th Cir. 2015); [68-1], p. 19. "[T]he breadth of that scope," however, "is limited by the language in the [beginning] of the [arbitration] provision." *Tittle*, 463 F.3d at 420. That language limits arbitration to disputes that are "solely between or among" the LLC members. [68-1], p. 19.

To determine which claims the parties agreed to arbitrate, the Court finds it helpful to consult the "Series-Qualifier Canon," which is a canon of interpretation enumerated in Justice Antonin Scalia and Bryan Garner's *Reading Law*. A. SCALIA & B. GARNER, *Reading Law: The*

*Interpretation of Legal Texts* (2012). That Canon "requires a modifier to apply to all items in a series when such an application would represent a natural construction." *United States v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018) (citing *Lockhart v. United States*, 577 U.S. 347, 355, 136 S. Ct. 958, 194 L. Ed. 2d 48 (2016)); *see* SCALIA & GARNER, *Reading Law*, at 147. It "generally applies when a modifier precedes or follows a list." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 928–29 (8th Cir. 2016). While the Canon typically applies when the modifier is an adjective or adverb modifying a noun or a verb, it is not limited to those constructions, as "[a]n adverb, in standard English, modifies almost anything except a noun." SCALIA & GARNER, *Reading Law*, at 147; *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1238 (D.C. Cir. 2008) (citing ROBERT FUNK ET AL., *The Elements of Grammar for Writers* 62 (MacMillan 1991)).

In the arbitration provision here, the word "solely" is modifying two prepositions, "between" and "among." [68-1], p. 19. Because "solely" immediately precedes "between or among," and the phrase has a natural construction, a proper reading supports the conclusion that arbitrable Member Disputes are those that are "solely between" or "solely among" the members. *Id.* So, it is clear that for a dispute to be within the scope of the arbitration agreement, it must concern only the members of the LLC and no one else.[6] The claims between the parties that do not meet this criterion are not subject to binding arbitration. For example, any dispute that arose after the Parkinsons left Intent Sports & Fitness in May 2023 is not a dispute "solely between or among"

---

[6] Merriam-Webster defines the adverb solely as "to the exclusion of all else" or "without another." *Solely*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/solely (2025).

members of Intent Sports & Fitness.[7] Instead, any such claims are between members and non-members, as the Parkinsons were no longer members.

### c.   Intent Performance's Claims under the Operative Complaint [33]

The Court must now look at the claims brought by Intent Performance in the operative Complaint [33] to deduce which disputes, if any, should be arbitrated under the language of the arbitration provision. David Parkinson and Bailey Parkinson, who signed the Intent Sports & Fitness Operating Agreement containing the arbitration clause, are not plaintiffs in Intent Performance's operative Complaint [33]. Instead, Intent Performance is the Plaintiff. But, Intent Performance was never a member of Intent Sports & Fitness and never signed the Operating Agreement. Thus, Intent Performance is not a party to the arbitration agreement under which the Defendants seek to compel arbitration.

Mississippi law recognizes that LLCs are "distinct legal entit[ies], separate from the identity of the owner-members." *Healy v. AT&T Servs., Inc.*, 362 So. 3d 14, 23 (Miss. 2023) (citing MISS. CODE ANN. § 79-29-305)). Additionally, a "plaintiff may not bring suit in his individual capacity to redress a wrong to the corporation." *Id.* (citing *Bruno v. Southeastern Services, Inc.*, 385 So. 2d 620, 622 (Miss. 1980)). Because only Intent Performance—and not the Parkinsons individually—is a party to the operative Complaint, none of the claims in the operative Complaint are solely between or among members of Intent Sports & Fitness. Claims by Intent Performance therefore fall outside the scope of the arbitration provision found in the Intent Sports & Fitness Operating Agreement.

---

[7] The Parkinsons have not been members of Intent Sports & Fitness since May 17, 2023, when they executed an "Agreement of Redemption and Assignment of Membership Interest." [33], p. 26.

Essentially, in seeking to arbitrate Intent Performance's claims, the Defendants ask this Court to pass through Intent Performance's corporate identity and compel arbitration of those claims with David Parkinson, an LLC member of Intent Performance, and Bailey Parkinson, David's wife. Even though the Parkinsons were previously members of Intent Sports & Fitness and signatories of the Operating Agreement, the Court cannot, for the purposes of compelling arbitration, disregard the legal distinction between the Parkinsons individually and Intent Performance as a limited liability company. Claims belonging to Intent Performance do not necessarily also belong to or implicate the Parkinsons merely because the Parkinsons used to be members of Defendant Intent Sports & Fitness, LLC. *See Pairprep, Inc. v. Ascension Data & Analytics, LLC*, No. 2:21-cv-00057-JRG, 2022 WL 2155951, *1 (E.D. Tex. Jun. 14, 2022) (referencing a previous order declining the defendant's motion to compel arbitration against two shareholders of the plaintiff corporation who were not themselves named plaintiffs). These claims by Intent Performance—which constitute disputes that are not solely between or among Intent Sports & Fitness members—are outside the scope of the provision and are not arbitrable.

### d.  The Defendants' Claims under the Operative Counterclaim [54]

Turning to Intent Sports & Fitness, Marcus Moore, and Katie Beth Sumrall's operative Counterclaim [54], the Parkinsons are named individually as third-party defendants. So, the Court must analyze whether any of the disputes in the operative Counterclaim arose while the Parkinsons were members of Intent Sports & Fitness, and therefore, are within the scope of the arbitration provision.

Under a plain reading of the arbitration provision, none of the claims in the operative Counterclaim are arbitrable because, although the claims are asserted against the Parkinsons

individually, these claims constitute disputes with former, and not current, members of Intent Sports & Fitness. It is undisputed that the Parkinsons relinquished their membership in Intent Sports & Fitness in May 2023. Even the earliest Counterclaim [8] in this case asserting claims by the Defendants against the Parkinsons was not filed until June 2023, over a month later. The disputes between the parties arising out of the Counterclaim are therefore not "solely between or among" members of Intent Sports & Fitness. [68-1], p. 19.

In *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 883 (Tex. App. 2012), the Texas Court of Appeals held that a former member of an LLC could not invoke the LLC's arbitration clause to arbitrate the LLC's claims against him because he was a former member, and not a member under the clause. The *Aldridge* panel relied on the definition of the word "member" in the LLC agreement, which explicitly "exclude[d] any Person who has ceased to be a Member." *Id.* The Northern District of Texas distinguished *Aldridge* in a case where the arbitration agreement expressly stated that "[t]his [a]greement shall survive the employer-employee relationship between [the employer] and the [c]laimant . . ." *Norred v. Cotton Patch Cafe, LLC*, No. 3:19-cv-1010-G, 2019 WL 5425479, *7 (N.D. Tex. Oct. 22, 2019).

This Court finds itself in between those two scenarios, as the Intent Sports & Fitness Operating Agreement neither explicitly excludes former members nor expressly includes such claims. Facing what to do with the Operating Agreement's silence, the Court looks to Mississippi contract law and another canon of interpretation. For one, "[i]t is fundamental in contract law that courts cannot make a contract where none exists, *nor can they modify, add to*, or subtract from the terms of a contract already in existence." *Ivison v. Ivison*, 762 So. 2d 329, 336 (Miss. 2000) (emphasis added) (citing *Wallace v. United Miss. Bank*, 726 So. 2d 578, 584–85 (Miss. 1998)). It is

also fundamental that "absent provision[s] cannot be supplied by the courts." *Rotkiske v. Klemm*, 589 U.S. 8, 14, 140 S. Ct. 355, 205 L. Ed. 2d 291 (2019) (citing SCALIA & GARNER, *Reading Law*, at 94). "To do so 'is not a construction of a [contract provision], but in effect, an enlargement of it by the court.'" *Id.* (citing *Nichols v. United States*, 578 U.S. 104, 110, 136 S. Ct. 1113, 194 L. Ed. 2d 324 (2016) (remaining citation omitted)).

The Intent Sports & Fitness Operating Agreement defines "Original Members" as the signatories to the Agreement. [68-1], p. 13. And "Substituted Members" is defined as a person or entity "who acquires a Membership Interest from an existing Member" and who satisfies other requirements, such as approval by a majority vote of the members. *Id.* at p. 16. The Agreement states that it is "binding upon and inure to the benefit of the Members and their respective heirs, legatees, legal representatives, successors, transferees and assigns." *Id.* at p. 22. It is silent, however, on the definition of "member." Nor does it contemplate former members or their continuing rights and obligations. For example, unlike in *Norred*, the Agreement states nowhere that those who relinquished their membership retain arbitration rights or any other rights pursuant to the Agreement. *See Norred*, 2019 WL 5425479, at *7. Mississippi law, which governs the Agreement, does define "member" in the LLC context. A member is "a person who has been admitted to a limited liability company" and "includes a member of a limited liability company who does not own a financial interest or who does not have an obligation to contribute capital to the limited liability company." MISS. CODE ANN. § 79-29-105(q). A member may have governance interests, voting rights, or other rights, powers, or privileges as outlined in the operating agreement. *Id.* Additionally, "[e]xcept as otherwise provided by the . . . written operating agreement, a member who has withdrawn from or been expelled from a limited liability company

ceases to be a member of the limited liability company and ceases to have any governance rights." MISS. CODE ANN. § 79-29-303.

Once the Parkinsons relinquished their membership in Intent Sports & Fitness, they ceased to be members of that LLC. Absent a provision in the Operating Agreement to that effect, "[t]he law of this state governs [t]he internal affairs of a limited liability company." MISS. CODE ANN. § 79-29-119; *see KBL Props., LLC v. Bellin*, 900 So. 2d 1160, 1165 (Miss. 2005) (applying the Mississippi Limited Liability Company Act as a gap filler when the operating agreement did not "affirmatively provide" an answer). Here, the Operating Agreement restricts arbitrable disputes to those that are solely between or among members of Intent Sports & Fitness. David and Bailey Parkinson are not members of that LLC, so any disputes involving them are not arbitrable under the plain language of the Operating Agreement. To find that "members" includes former members like the Parkinsons, this Court would be adding words or meaning to the Operating Agreement that are not there and cutting against state law on LLCs. Accordingly, none of the claims in the operative Counterclaim are arbitrable.

To be sure, the Court recognizes that there is a distinction between "disputes" and the case as a whole. "[C]ourts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A Court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 132 S. Ct. 23, 181 L. Ed. 2d 323 (2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). But even if this Court were to give a more liberal reading to the Operating

Agreement and find that disputes are arbitrable if the relevant facts underlying the claim took place while the Parkinsons were still members, most, if not all, of the claims would still be non-arbitrable.

In Count One for breach of fiduciary duty, the Defendants assert that David and Bailey Parkinson "engag[ed] in actions that were detrimental to [Intent Sports & Fitness,] LLC's interests and [] fail[ed] to give their best efforts to the LLC." [54], p. 22. In particular, the Defendants allege that the Parkinsons misappropriated confidential information and trade secrets. The appropriation of confidential business information, however, is alleged to have occurred on May 30, 2023. *Id.* at p. 20. And other factual allegations that might support a breach of fiduciary duty claim are dated May 31, 2023. *Id.* at pps. 20-21. Both of these dates are after May 17, 2023, when the Parkinsons relinquished their membership in Intent Sports & Fitness. Although the Defendants do not assign a date specifically to the trade secret allegation, all the other factual allegations are dated after the Parkinsons were no longer members, which supports a finding that this claim would still not be arbitrable.

The same is true for Count Two, the claim for breach of the Operating Agreement. Though this claim regurgitates the allegations for misappropriation of trade secrets and confidential information, the crux of the claim is that the Parkinsons breached the Operating Agreement by filing a lawsuit in this Court without first attempting to resolve these disputes through mediation and arbitration. [54], p. 23. The filing of this lawsuit on June 6, 2023, occurred weeks after the Parkinsons exited Intent Sports & Fitness.

The rest of the claims are not particularly close calls. Count Three is a bad faith claim concerning the unauthorized access and use of LLC information and the solicitation of customers to leave Intent Sports & Fitness. Again, the Defendants allege that the unauthorized access took

place on May 31, 2023, and they allege that the solicitation of Intent Sports & Fitness customers began on that date, after the Parkinsons had left Intent Sports & Fitness. *Id.* at pps. 20-21. The Defendants allege invasion of privacy in Count Four resulting from the same unauthorized access to information, which includes the alleged access to an email account owned by Briar Russell and the interference with a notebook owned by Katie Beth Sumrall. *Id.* at pps. 24-25. All of this misconduct is alleged to have occurred on or about May 31, 2023. *Id.* at p. 20. Count Five for trespass to chattels and conversion reiterates the same allegations about Russell's email account and Sumrall's notebook. *Id.* at pps. 25-26. And, both Count Four and Count Five involve Intent Performance.

Similarly, Count Six for tortious interference with contract also concerns conduct that allegedly occurred on or about May 31, 2023. *Id.* at pps. 26-27. The Defendants assert that Intent Performance and Lora Davis solicited Intent Sports & Fitness' customers and encouraged them to "take their business to another local fitness establishment." *Id.* This claim not only arose when the Parkinsons were no longer members of Intent Sports & Fitness, but it also involves Davis and Intent Performance, who were never members. The same is true for Count Seven for tortious interference with business relations, and Count Eight for breach of contract, as these counts make virtually identical allegations as those in Count Six. *Id.* at pps. 27-30. Count Nine is another breach of contract claim for unpaid rent. *Id.* at p. 31. The Defendants assert that Intent Performance failed to pay rent to MACE Real Estate Holdings, LLC, a company in which Marcus Moore is a member and which the Parkinsons used to be members. [54], pps. 8, 31. But, the rent is allegedly owed by Intent Performance to MACE, both of which were never members of Intent Sports & Fitness. This claim is not arbitrable under the Intent Sports & Fitness Operating Agreement. Lastly, Counts Ten

and Eleven for slander and libel, respectively, involve spoken and written statements allegedly made by the Parkinsons on or about May 31, 2023, about Intent Sports & Fitness. *Id.* at pps. 31-33. These claims, too, involve misconduct alleged to have occurred after the Parkinsons relinquished their membership in Intent Sports & Fitness, and are not arbitrable.

In sum, because the Court cannot read into the Intent Sports & Fitness Operating Agreement that the word "member" includes former members, and all of the disputes in the operative Counterclaim are disputes involving David and Bailey Parkinson, who are no longer members of Intent Sports & Fitness, these claims are not arbitrable. None of the claims in the operative Complaint or the operative Counterclaim are arbitrable, so the Motion to Compel Arbitration [49] is denied. The Court now shifts to a discussion of Jackson, Tullos & Rogers' Motion to Compel Arbitration [50].

**C.  Jackson, Tullos & Rogers' Motion to Compel Arbitration [50]**

Jackson, Tullos & Rogers is not a signatory to the Operating Agreement, and as a result, has no written arbitration agreement with any of the parties in this case. Nonetheless, Jackson, Tullos & Rogers seeks to compel arbitration as a non-signatory under an equitable estoppel theory. [51], p. 8. In Mississippi, equitable estoppel is recognized as a means for a non-signatory to compel arbitration. *See B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005). But, "a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories." *Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002). Rather, equitable estoppel allows a non-signatory to compel arbitration in two circumstances. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000).

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in

> asserting its claims against a nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Id.* Jackson, Tullos & Rogers proceeds under that second circumstance, averring that the Plaintiff alleges interdependent and concerted conduct by Jackson, Tullos & Rogers and the remaining Defendants relating to the firm's representation of Intent Sports & Fitness. [51], p. 9.

Under this "intertwined claims" theory of equitable estoppel, a plaintiff "cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny arbitration's applicability because the defendant is a nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) (citing *Grigson*, 210 F.3d at 528). Estoppel applies to prevent "a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* (quoting *Thomson–C.S.F., S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). But "whether to utilize equitable estoppel in this fashion is within the district court's discretion." *Grigson*, 210 F.3d at 528. "Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas*, 345 F.3d at 358 (citing *Westmoreland*, 299 F.3d at 465).

As the Court discussed above, Intent Performance was never a member of Intent Sports & Fitness and did not sign the Operating Agreement containing the arbitration provision. In this lawsuit, Intent Performance asserts claims against Jackson, Tullos & Rogers for (1) aiding-and-abetting or conspiracy to commit unauthorized computer access and theft; (2) aiding-and-abetting

or conspiracy to commit theft of trade secrets; (3) tortious interference with contracts and business expectancies; (4) civil conspiracy; and (5) legal malpractice. [33], pps. 19-31. Jackson, Tullos & Rogers seeks to arbitrate these claims under an estoppel theory, pursuant to the Operating Agreement that was signed by David and Bailey Parkinson, Marcus Moore, and Briar Russell. In other words, Jackson, Tullos & Rogers, a non-signatory to the arbitration agreement, seeks to arbitrate claims brought by Intent Performance, another non-signatory.

Although the Fifth Circuit has recognized instances where non-signatories may enforce an arbitration agreement against a signatory to the agreement, this Court is not aware of—and Jackson, Tullos & Rogers does not point to—any specific authority where a Court has compelled arbitration between two non-signatories. *See Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365-66 (S.D. Tex. 2006), *aff'd sub nom. Wood v. Penntex Res. LP.*, 322 F. App'x 410 (5th Cir. 2009). Allowing a non-signatory to enforce an arbitration agreement via estoppel "makes sense [when] the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Bridas*, 345 F.3d at 361 (citing J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bridge Too Far?*, 21 Rev. Litig. 593, 633 (2002)). But here, the signatories to the Operating Agreement did not agree to arbitrate disputes involving Intent Performance, a non-signatory and non-member of Intent Sports & Fitness.

Any disputes involving Intent Performance are disputes that are not "solely between or among" members of Intent Sports & Fitness. *See* [68-1], p. 19. Where the signatories to the Operating Agreement did not expressly agree to arbitrate claims of this type, it would be imprudent for the Court to permit another non-signatory, like Jackson, Tullos & Rogers, to arbitrate those

claims. *See B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 493 (Miss. 2005) (holding that a non-signatory attempting to compel arbitration under an estoppel theory "should not be granted rights under a contract unrelated in scope . . ." to the parties' dispute); *see also Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) ("A non-signatory, however, cannot invoke the doctrine [of equitable estoppel] to compel arbitration of claims that are not within the scope of the arbitration clause."); *Cnty. of Monmouth v. Rite Aid Corp.*, 667 F. Supp. 3d 152, 161 (E.D. Pa. 2023) ("[A]n arbitration agreement that merely brings non-signatories together does not obligate those non-signatories to arbitrate their disputes."). The Court denies Jackson, Tullos & Rogers' Motion to Compel Arbitration [50], and will retain the claims asserted against it by Intent Performance.

### III. MOTION TO DISMISS

Because Jackson, Tullos & Rogers' claims will not go to arbitration, and instead will remain before this Court, the Court must analyze Jackson, Tullos & Rogers' Partial Motion to Dismiss [52], in which it seeks the dismissal, under Federal Rule of Civil Procedure 12(b)(6), of four claims: (1) aiding-and-abetting or conspiracy to commit unauthorized computer access and theft; (2) aiding-and-abetting or conspiracy to commit theft of trade secrets; (3) tortious interference with contracts and business expectancies; and (4) civil conspiracy. [33], pps. 19-29. For all of the reasons stated below, these claims are dismissed. Jackson, Tullos & Rogers has not moved to dismiss the legal malpractice claim, so that claim will remain. *Id.* at p. 30.

#### A. Standard of Review

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). That said, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 832 (5th Cir. 2020). "The issue is not whether the plaintiff[] will ultimately prevail, but whether [he is] entitled to offer evidence to support [his] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted).

## B. Jackson, Tullos & Rogers, PLLC's Partial Motion To Dismiss [52] is Granted

The Court finds that Intent Performance has failed to state a claim against Jackson, Tullos & Rogers on each claim that Jackson, Tullos & Rogers seeks to dismiss. Accordingly, these claims are dismissed, and the only claim that remains against Jackson, Tullos & Rogers is Intent Performance's legal malpractice claim in Count Twelve. [33], p. 30.

1. **Aiding-and-abetting or Conspiracy to Commit Unauthorized Computer Access and Theft**

Intent Performance brings its aiding-and-abetting or conspiracy to commit unauthorized computer access and theft claim under the Computer Fraud and Abuse Act ("CFAA"). 18 U.S.C. § 1030. The CFAA makes it a crime for a party "with intent to defraud, [to] access[] a protected computer[8] without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud." 18 U.S.C. § 1030(a)(4). The fraud must cause a loss to one or more persons during any one-year period of at least $5,000 in value. *See id.*; *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 923 (E.D. Va. 2017); *Associated Pump & Supply Co., LLC v. Dupre*, No. 14–9, 2014 WL 1330196, at *5 (E.D. La. April 3, 2014). The CFAA provides a private right of action, so that any person "who suffers damages or loss by reason of violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). And Section 1030(b) states: "Whomever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) . . ." 18 U.S.C. § 1030(b). Subsection (c) of the Act sets forth various criminal penalties. 18 U.S.C. § 1030(c).

To be sure, courts are divided as to whether the CFAA supports either an aiding-and-abetting or conspiracy theory for civil actions. *See Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 500 n.4 (D. Del. 2022) (collecting cases and finding that courts are divided as to whether aiding-and-abetting liability applies to Section 1030); *Kiser v. Moyal*, No. CV 23-464-SDD-SDJ, 2024 WL 4229936, at *10 n.122 (M.D. La. Sep. 18, 2024) (noting that there is "some

---

[8] "Protected computer means a computer used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B).

uncertainty in the case law regarding whether a civil defendant may be liable for a conspiracy under the CFAA").[9] This Court is skeptical that aiding-and-abetting or conspiracy claims may be brought under the CFAA. The plain language of Section 1030(b) seems to subject a conspiracy violation of the CFAA only to criminal punishment, and not civil liability. 18 U.S.C. § 1030(b). And aiding-and-abetting violations are not even mentioned.

Assuming without deciding, though, that the CFAA does support these secondary liability theories, Intent Performance has failed to state a claim. *See Trademotion*, 857 F. Supp. 2d at 1293 ("Even if the Court were to construe this section as providing for a private cause of action against co-conspirators, the allegations of the operative complaint are insufficient to meet the *Twombly* plausibility standard."). A conspiracy claim under the CFAA requires the defendant to have "a knowing agreement with another to commit the unlawful act" or "evidence of an agreement and common activities in furtherance of the unlawful act." *Id.* at 1294; *Welenco*, 126 F. Supp. 3d at 1176. To support an aiding-and-abetting claim, the plaintiff must allege that the defendant enabled access to the plaintiff's computer, so that the defendant is able to gain access through other parties. *See Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1296-97 (S.D. Fla. 2017) (citing

---

[9] *See also Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343-44 (N.D. Ga. 2017) (finding that a party that did not access the plaintiff's computers "may not be held liable as the violator under the CFAA"); *Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013) (the "CFAA requires that the individual actually access the information, not merely receive it from a third party"); *Doe v. Dartmouth–Hitchcock Med. Ctr.*, No. Civ. 00-100-M, 2001 WL 873063, at *6 (D.N.H. Jul. 19, 2001) ("neither the language nor the purpose of the CFAA are consistent with holding the . . . defendants vicariously liable"); *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1293 (M.D. Fla. 2012) (finding no private cause of action against co-conspirators under the CFAA). *Compare Hovanec v. Miller*, No. SA-17-cv-766-XR, 2018 WL 1221486, *8 (W.D. Tex. Mar. 7, 2018) (finding that a civil action may be brought under the CFAA against a defendant who conspired to violate the statute); *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015) (finding a private right of action for conspiracy under the CFAA); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816 (N.D. Cal. 2014) (same); *Vacation Club Servs., Inc. v. Rodriguez*, No. 6:10-cv-247-ORL-31-GJK, 2010 WL 1645129, at *1-2 (M.D. Fla. Apr. 22, 2010) (same).

*Synthes, Inc. v. Emerge Med., Inc.*, No. Civ. A. 11–1566, 2012 WL 4205476, at *20 (E.D. Pa. Sep. 19, 2012)).

In its Complaint [33], Intent Performance alleges that Intent Sports & Fitness, Marcus Moore, Briar Russell, and Katie Beth Sumrall formed an agreement "to wrongfully acquire and misappropriate [Intent] Performance's trade secrets through illegal unauthorized access by Mr. Bassett." [33], p. 19. As to Jackson, Tullos & Rogers, Intent Performance claims the law firm "was party to this illegal agreement by representing [Intent] Sports & Fitness in connection with a transaction intended to create the conditions under which [Intent] Sports & Fitness, and other Defendants, could wrongfully acquire and misappropriate [Intent] Performance's trade secrets . . ." *Id.*

Intent Performance does not allege whether, or how Jackson, Tullos & Rogers agreed with the other Defendants to gain unauthorized computer access, or that Jackson, Tullos & Rogers undertook common activities with the other Defendants to illegally access Intent Performance's computer. Nor does Intent Performance allege how Jackson, Tullos & Rogers enabled the other Defendants to access Intent Performance's computer. To the Court, it seems that Intent Performance's claim is based on a theory that, because Jackson, Tullos & Rogers represented Intent Sports & Fitness as legal counsel at the time of the alleged unauthorized access, Jackson, Tullos & Rogers agreed to commit that CFAA violation or allowed it to happen. But standing on its own, this is not a conspiracy nor aiding-and-abetting. Intent Performance pleads no facts to show how a "transaction" that Jackson, Tullos & Rogers was allegedly part of "create[d] the conditions" giving rise to the alleged unauthorized access of a computer. [33], p. 19. Indeed, Paragraph 104 in Count Three is the only mention of Jackson, Tullos & Rogers for this claim. *Id.* Such a barebones assertion

does not put Jackson, Tullos & Rogers on notice as to how it might have conspired with or aided and abetted another party to violate the CFAA. This claim is dismissed.

### 2. Aiding-and-abetting or Conspiracy to Commit Theft of Trade Secrets

In Count Four, Intent Performance reiterates its conclusory allegations that Jackson, Tullos & Rogers represented Intent Sports & Fitness "in connection with a transaction intended to create the conditions" under which Intent Sports & Fitness, and the other Defendants, could steal Intent Performance's trade secrets. [33], p. 20. It further alleges that Jackson, Tullos & Rogers "committed an overt act by advising Sports & Fitness on the predicate transaction and during the course of the wrongful acts, including by facilitating the assertion and prosecution of claims against its client, Performance." *Id.*

Under the Defense of Trade Secrets Act ("DTSA"), "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines a trade secret as "'all forms and types of financial, business, scientific, technical, economic, or engineering information' (1) that the owner has taken reasonable measures to keep confidential and (2) that derive independent economic value, actual or potential, from not being generally known by or readily accessible to the public." *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 663-64 (E.D. Tex. 2024) (citing 18 U.S.C. § 1839(3)); *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) ("A trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means.")). To succeed on a DTSA claim, a plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper

means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C.*, 44 F.4th at 262 (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).

Intent Performance, however, brings its DTSA claim based on an-aiding-and-abetting or conspiracy theory. But it provides no authority to show that the DTSA supports a private right of action for aiding-and-abetting or conspiracy. "Generally, courts have held that . . . conspiracy or secondary liability under the DTSA is not available as a private right of action, and thus a plaintiff must show 'that each defendant misappropriated at least one trade secret.'" *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-cv-3687-ALC-RWL, 2023 WL 6386845, at *7 (S.D.N.Y. Sep. 29, 2023) (citing *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *13 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021)); *see Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842 (E.D. Va. 2017) ("[E]ven after the enactment of the DTSA, plaintiffs who asserted claims for trade secrets misappropriation under the DTSA have relied on state law to present conspiracy claims . . .").[10] Therefore, an aiding-and-abetting or conspiracy claim under the DTSA fails as a matter of law. Of course, even though these theories are not available, Intent Performance's claim could survive if it sufficiently alleged a direct violation of the DTSA against Jackson, Tullos & Rogers. But, Intent Performance does not allege that Jackson, Tullos & Rogers misappropriated at least one trade secret itself. Specifically, Intent Performance does not allege that Jackson, Tullos & Rogers acquired its trade secret by breaching a confidential relationship or other

---

[10] *See also Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 158 (S.D.N.Y. 2025) ("[T]here is no private cause of action under the DTSA for aiding and abetting misappropriation of trade secrets."); *Credit Sage LLC v. Credit Wellness LLC*, 2024 WL 99474, at *10 (D. Wyo. Jan. 9, 2024) (agreeing that "'aiding and abetting misappropriation of trade secrets' . . . is not a private cause of action recognized under federal law"); *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) ("aiding and abetting the theft of trade secrets is not a cognizable right of action under the DTSA").

improper means, nor how Jackson, Tullos & Rogers used the trade secret, without Intent Performance's authorization. *See CAE Integrated, L.L.C.*, 44 F.4th at 262. Instead, Intent Performance claims only that Jackson, Tullos & Rogers helped "to create the conditions" in which its trade secrets could be stolen. [33], p. 20. Without more, these factual allegations do not meet the *Twombly/Iqbal* pleading requirements, and this claim is dismissed.

### 3. Tortious Interference with Contracts and Business Expectancies

Under Mississippi law, "[a] person who 'maliciously interferes with a valid and enforceable contract' may be held liable for tortious interference." *Perkins v. Wal-Mart Stores, Inc.*, 46 So. 3d 839, 846 (Miss. Ct. App. 2010) (citing *Morrison v. Miss. Enter. For Tech., Inc.*, 798 So. 2d 567, 575 (Miss. Ct. App.2001) (citation omitted)). A tortious interference with contracts claim requires the plaintiff to prove that the defendant's acts: "(1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss." *Id.* (citing *Hammons v. Fleetwood Homes Of Miss., Inc.*, 907 So. 2d 357, 361 (Miss. Ct. App. 2004) (citation omitted)). To succeed on this claim, a plaintiff "must prove that the contract would have been performed but for the alleged interference." *Id.* (citing *Grice v. FedEx Ground Package Sys., Inc.*, 925 So. 2d 907, 910 (Miss. Ct. App. 2006).

Intent Performance asserts this claim as to all Defendants, alleging the Defendants knew that Intent Performance had contracts with existence clients and expectancies with those and prospective clients. [33], p. 23. Intent Performance further alleges that the Defendants knowingly and intentionally interfered with these contracts by:

> (i) contacting [Intent] Performance's clients, informing them that [Intent] Sports & Fitness would be coaching them going forward, and diverting payments owed to

> [Intent] Performance; (ii) engaging in marketing for baseball coaching services; (iii) participating in the drafting of notes memorializing their plan to steal [Intent] Performance's business and destroy it as a going concern; (iv) wrongfully denying [Intent] Performance access to the building so [Intent] Performance could not engage in business operations; (v) destroying [Intent] Performance's computer equipment such that it forever lost its customer lists and marketing materials; and (vi) through other wrongful acts described in detail above.

*Id.* at pps. 23-24. Intent Performance also asserts that this alleged tortious interference "was intended to cause, and did cause, the destruction of Performance's business." *Id.* at p. 24. As a result, Intent Performance claims, "based on historical data and conservative estimates," that it "will lose as much as $25,000 in revenue per month over the next three years." *Id.*

Despite these allegations, Intent Performance has failed to aver the existence of any specific contract with a third party, much less how such contract would have been performed but for Jackson, Tullos & Rogers' interference. *See Perkins*, 46 So. 3d at 846. Additionally, based on the allegations within Intent Performance's operative Complaint [33], it is clear that none of Intent Performance's factual allegations above apply to Jackson, Tullos & Rogers. *See Silver Dollar Sales, Inc. v. Battah*, 391 So. 3d 845, 852 (Miss. Ct. App. 2024) ("[T]he plaintiff must prove that the defendant's conduct caused the plaintiff actual damages . . .") (emphasis removed) (citing *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 17 (Miss. 2007)), *reh'g denied* (May 7, 2024), *cert. denied*, 391 So. 3d 819 (Miss. 2024). Instead, Adam Bassett is alleged to have contacted Intent Performance's clients and told them that Intent Sports & Fitness would be taking over their coaching. [33], p. 9. Second, Intent Performance alleges that Intent Sports & Fitness began to advertise baseball coaching lessons. *Id.* at p. 10. Further, Katie Beth Sumrall is accused of drafting notes detailing the Defendants' plan to take over Intent Performance's business, and Intent Performance blames Marcus Moore and Briar Russell for denying it access to the building. *Id.* at pps. 12, 13-14. Lastly, Intent Performance asserts that Moore, Russell, and Bassett destroyed its property, including its

31

computer hard drive, customer lists, and marketing materials. *Id.* at pps. 14, 19. None of these allegations allege any wrongdoing by Jackson, Tullos & Rogers; rather, they all concern other Defendants. Mississippi law is clear, however, that to sustain a tortious interference claim, the plaintiff must show how the defendant's acts caused the alleged harm. *See Perkins*, 46 So. 3d at 846.

Intent Performance has not only failed to state, as to its tortious interference claim, any wrongdoing by Jackson, Tullos & Rogers, but it has also failed to show how any supposed wrongdoing by the law firm affected Intent Performance's existing contracts with third parties. In sum, Intent Performance has failed to plead sufficient facts, as required by *Twombly* and *Iqbal*, on each element of this claim to show that it is entitled to relief. The tortious interference with contract claim is dismissed.

### 4.  Civil Conspiracy

Intent Performance claims civil conspiracy against all Defendants. [33], p. 27. Having disposed of all other claims against Jackson, Tullos & Rogers, only this claim and Count Twelve for legal malpractice—which Intent Performance brings against only Jackson, Tullos & Rogers— remain. *Id.* at pps. 27, 30. "Under Mississippi law, the elements of a civil conspiracy are: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (citation and internal quotations omitted).

Intent Performance alleges that the "Defendants formed an illegal agreement, to wit: to steal [Intent] Performance's business and destroy it as a going concern." [33], p. 27. But the operative Complaint says no more about the nature or the contours of the supposed illegal

agreement. Rather than alleging "specific facts indicating an agreement or meeting of the minds between" the Defendants, Intent Performance "only provide[s] the conclusory allegation that they conspired" to harm Intent Performance's business. *See Palmisano v. Mississippi Dep't of Wildlife, Fisheries, & Parks*, No. 5:14-cv-94-KS-MTP, 2015 WL 1925466, *2 (S.D. Miss. Apr. 28, 2015) (dismissing a civil conspiracy claim under Mississippi law for failing to adequately plead under the *Twombly/Iqbal* standard); *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11–cv–136–KS–MTP, 2012 WL 642304, *6 (S.D. Miss. Feb. 27, 2012) (dismissing conspiracy claim because the plaintiff failed to allege any facts concerning an agreement between alleged co-conspirators). Though Intent Performance alleges that the Defendants formed an illegal agreement, this is "nothing more than a threadbare recital of the [first] element cited above." *BC's Heating & Air*, 2012 WL 642304, at *6 (citing *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 246 (5th Cir. 2010)). Because the first element has not been sufficiently pled, Intent Performance cannot sustain a claim for civil conspiracy under Mississippi law.[11]

Even if Intent Performance satisfied the first element, it is not clear under the second or third elements what purpose the alleged agreement was made to advance and how the alleged overt acts furthered that purpose. In Mississippi, "the claim of civil conspiracy does not stand alone, but is dependent on conspiring to commit a particular wrong." *Sharkey v. Barber*, 188 So. 3d 1245, 1247 (Miss. Ct. App. 2016) (citing *Aiken v. Rimkus Consulting Grp., Inc.*, 333 F. App'x 806, 812 (5th Cir.

---

[11] In seeking dismissal of this claim, Jackson, Tullos & Rogers also argues that the "intra-corporate conspiracy doctrine" bars the claim because the firm acted as an agent for Intent Sports & Fitness, and "an agreement between or among agents of the same legal entity . . . is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769–771, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984)). This doctrine, however, arises under federal law, and "[t]he Mississippi Supreme Court has never addressed" it. *Wesley Health Sys., LLC v. Forrest Cnty. Bd. of Sup'rs*, No. 2:12-cv-59-KS-MTP, 2012 WL 4799506, *6 (S.D. Miss. Oct. 9, 2012). Although some federal courts sitting in this state have applied the intra-corporate conspiracy doctrine to Mississippi civil conspiracy claims, this Court need not reach that question when it can dismiss this claim under *Twombly/Iqbal*.

2009) (internal citation omitted)). But, the facts pled in the operative Complaint are a moving target depending on the Defendant against whom misconduct is alleged. For example, the only remaining tort against Jackson, Tullos & Rogers that could support this civil conspiracy claim is the legal malpractice claim in Count Twelve. While Intent Performance alleges overt acts by Jackson, Tullos & Rogers to that effect—that Jackson, Tullos & Rogers had a conflict of interest by representing both Intent Performance and Intent Sports & Fitness and taking litigation positions adverse to Intent Performance while continuing to represent it—Intent Performance does not make similar factual allegations against any other Defendant for the purposes of a conspiracy. [33], pps. 27-28. Though allegations against the other Defendants in the legal malpractice context would not be identical, as no other Defendant is a lawyer or law firm, Intent Performance could have alleged that other Defendants solicited Jackson, Tullos & Rogers to represent both sides of the litigation in order to prejudice Intent Performance. Instead, allegations relating to the legal malpractice claim are made against Jackson, Tullos & Rogers alone and do not support a conspiracy theory.

Additionally, Intent Performance accuses Jackson, Tullos & Rogers of causing the fraudulent inducement of the Parkinsons to relinquish their membership and "other wrongful acts described above." *Id.* at p. 27. Specifically, Intent Performance alleges that Jackson, Tullos & Rogers drafted the documents by which the Parkinsons relinquished their membership interests in Intent Sports & Fitness. *Id.* at p. 15. Although this claim alleges that David and Bailey Parkinson were personally induced to relinquish their ownership interests, the claim makes no allegation that Intent Performance was induced to do anything, only that the business was harmed by the Parkinsons' disaffiliation with Intent Sports & Fitness. *Id.* at pps. 25-26. As discussed above, only Intent Performance, and not the Parkinsons individually, is a party to the operative Complaint.

Allegations concerning them individually are immaterial to claims brought by Intent Performance, as the two are separate legal entities. *See Healy v. AT&T Servs., Inc.*, 362 So. 3d 14, 23 (Miss. 2023). Moreover, even though Intent Performance accuses Jackson, Tullos & Rogers of drafting the documents for the Parkinsons to relinquish their shares, only Briar Russell is named under the fraudulent inducement claim. Jackson, Tullos & Rogers is not even mentioned. [33], pps. 25-26. Aside from the conclusory allegations that the fraudulent inducement would not have occurred but for Jackson, Tullos & Rogers' conflict of interest, Intent Performance does not allege any overt act by the law firm relating to the underlying fraudulent inducement claim. Since Jackson, Tullos & Rogers is not actually alleged to have participated in the inducement, it cannot be part of a conspiracy to do so. In other words, it is not accused of committing that "particular wrong." *Sharkey*, 188 So. 3d at 1247. Intent Performance has not raised "more than a sheer possibility" that Jackson, Tullos & Rogers conspired to commit legal malpractice or to fraudulently induce the Parkinsons to leave Intent Sports & Fitness. *Twombly*, 550 U.S. at 570. Accordingly, the civil conspiracy claim must fail.

For the above four claims, Intent Performance has not stated a claim against Jackson, Tullos & Rogers upon which relief can be grated. Therefore, Jackson, Tullos & Rogers' Partial Motion to Dismiss [52] is granted, and the only claim that remains against it is Intent Performance's Count Twelve for legal malpractice.

### III. MOTION TO AMEND

Plaintiff Intent Performance and Third-Party Defendants David Parkinson, Bailey Parkinson, and Lora Davis' filed a Partial Motion to Dismiss [56] some of the Defendant's counterclaims. Specifically, they seek dismissal of the Defendants' slander, libel, and tortious interference with business relations claims. [57], pps. 3, 6. In response, the Defendants argue that

these counterclaims are sufficient as pled in the operative Counterclaim [54]. *See* [78]. Nevertheless, the Defendants moved for leave to amend [75] their Counterclaim, alleging that the proposed Second Amended Counterclaim [75-1], which is attached, "address[es] any perceived deficiencies" and adds "substantial additional factual detail" to their claims. *Id.* at p. 9; [75], p. 2. The Plaintiff and Third-Party Defendants oppose amendment, arguing that it is futile. [80], p. 2. Because the amendment of the Defendants' slander and tortious interference with business relations claims is not futile, the Court will permit amendment of those claims.[12]

### A.  Standard of Review

A motion for leave to file an amended complaint is governed by Rule 15(a)(2), which states: "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But leave to amend "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citations omitted). The Fifth Circuit interprets Rule 15 as having a heavy bias in favor of granting leave, but courts have the discretion to deny a motion to amend that is frivolous or futile. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999). "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Id. See also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)

---

[12] The Plaintiff and Third-Party Defendants briefly argue that Defendant Katie Beth Sumrall lacks standing to assert her counterclaims for defamation and tortious interference with business relations because those claims concern Intent Sports & Fitness and not her individually. [57], p. 2. The Defendants respond that Sumrall has standing for her defamation claim because the alleged defamatory statements "directly harmed her professional standing and reputation." [78], p. 20. But nowhere in their Response [78] do the Defendants rebut that Sumrall lacks standing for the tortious interference claim. As a result, the Court finds that Sumrall has abandoned this claim. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings."), *cert. denied*, 144 S. Ct. 348, 217 L. Ed. 2d 186 (2023), *reh'g denied*, 144 S. Ct. 629, 217 L. Ed. 2d 337 (2024). To the extent the Defendants' tortious interference with business relations counterclaim concerns Sumrall individually, her claim is dismissed.

(refusal to grant leave to amend "without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion").

The Fifth Circuit has interpreted "futility" to "mean that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (citations omitted). To determine whether a proposed amended complaint is futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted). If, after applying the Rule 12(b)(6) standard to the challenged counterclaims in the proposed Second Amended Counterclaim, the Court finds that the amendment is not futile, it may deny the Motion to Dismiss [56] as moot. *See Rodriguez v. Xerox Bus. Servs., LLC*, EP-16-cv-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. Jun. 16, 2016) ("A plaintiff's filing of an amended complaint may render moot a pending motion to dismiss.") (collecting cases).

### B. The Motion to Amend [75] is Granted in Part

In addition to the slander, libel, and tortious interference with business relations claims—which the Plaintiff and Third-Party Defendants seek to dismiss [56]—the Defendants also seek to amend additional claims in the proposed Second Amended Counterclaim [75-1]: tortious interference with contract, invasion of privacy, and intentional infliction of emotional distress. [75], p. 2. The Plaintiff and Third-Party Defendants oppose the amendment of these claims. [80], p. 2. But because they did not seek dismissal of these claims in the Partial Motion to Dismiss [56]—and that Motion prompted the Defendants' attempt to amend their Counterclaim—the Court makes no finding regarding the sufficiency of the tortious interference with contract, invasion of privacy, and intentional infliction of emotional distress claims as alleged in the proposed Second Amended

Counterclaim [75-1]. Rather, the Court addresses only whether the amendment of the slander, libel, and tortious interference with business relations claims is futile. After the Defendants file their Second Amended Counterclaim and it is formally docketed, the Defendants may challenge the counterclaims on Rule 12 grounds through an appropriately filed motion.

### 1. Slander

To prove slander, a plaintiff has the burden to prove four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Bros. v. Winstead*, 129 So. 3d 906, 928 (Miss. 2014) (citing *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998)). In Mississippi, certain statements are actionable *per se*:

> (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment. (2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and in this and some other jurisdictions (5) words imputing to a female a want of chastity.

*Id.* (citing *Speed v. Scott*, 787 So. 2d 626, 632 (Miss. 2001)). The slander "must be clear and unmistakable from the words themselves and not be the product of any innuendo, speculation or conjecture." *Id.* (citing *Baugh v. Baugh*, 512 So. 2d 1283, 1285 (Miss. 1987)). Mississippi law allows a party "to file a lawsuit against another when there is 'any attack on the capabilities of a plaintiff in [her] trade or profession." *Fagan v. Faulkner*, 396 So. 3d 1160, 1170 (Miss. Ct. App. 2023) (McCarty, J., dissenting) (citing *McFadden v. United States Fidelity and Guar. Co.*, 766 So. 2d 20, 24 (Miss. Ct. App. 2000)). "Our law has long recognized that one may protect their business reputation through a lawsuit." *Id.* (citing *W.T. Farley Inc. v. Bufkin*, 132 So. 86, 87 (1931)).

In the proposed Second Amended Counterclaim [75-1], the Defendants aver two kinds of slander *per se* statements. [75-1], p. 39. They allege that the Plaintiff and Third-Party Defendants contacted customers of Intent Sports & Fitness and made oral statements imputing the guilt or commission of a criminal offense involving moral turpitude and want of integrity in Intent Sports & Fitness' business conduct. *Id.* at p. 39. The Court will briefly discuss the alleged statements.

First, the Defendants claim to have a screenshot from Jon Nunley, a potential customer, who was told by the Plaintiff and Third-Party Defendants of how "Marcus had done David." *Id.* As a result of the statement, Nunley stated that "he would never do business with Marcus Moore or [Intent] Sports & Fitness." *Id.* Second, Lisa Pittman Windham, who was a former gym member of Intent Sports & Fitness, "informed Marcus Moore directly that she was told by [the Third-Party] Defendants that [Intent] Sports & Fitness was going bankrupt and canceled her membership as a result." *Id.* at p. 40. Third, Sarah Hinton, another former gym member, claimed that she was told similar bankruptcy rumors by the Plaintiff and Third-Party Defendants. *Id.* Finally, Connor Pittman, a current gym member, "relayed to Briar Russell and Adam Bassett that David Parkinson had made disparaging remarks about [Intent] Sports & Fitness." *Id.*

These allegations—which include the recipients, as well as the nature, of the alleged defamatory statements—relate to the Plaintiff and Third-Party Defendants' defamatory statements about the Defendants' business reputations. Specifically, these statements accuse the Defendants of "engag[ing] in unethical conduct, bad business practices, and [of being] financially unstable or on the verge of bankruptcy." [75-1], p. 39. Taking these statements as true, and in conjunction with those above that were allegedly heard by current, former, and prospective members of Intent Sports & Fitness, these allegations implicate the Defendants' business reputation and capabilities. And

such statements are actionable when they are "germane to the person's business reputation . . ." *Fagan*, 396 So. 3d at 1167 (citing Restatement (First) of Torts § 573 (1938)).

Second, the Defendants also claim more generally that the Plaintiff and Third-Party Defendants told third parties that Intent Sports & Fitness "was stealing or had stolen property belonging to Intent Performance." *Id.* at p. 39. The Defendants further allege that this imputed the guilt or commission of a criminal offense involving moral turpitude, constituting slander *per se*. *Id.* While the Mississippi Supreme Court has held that the "mere use of the label 'thief' is insufficient," the "utterance falsely imputing a crime or accusing one of being a thief is actionable *per se*." *Speed*, 787 So. 2d at 633, 634 (citing *Baugh*, 512 So. 2d at 1285). Here, taking the Defendants' allegations as true, the Plaintiff and Third-Party Defendants did not merely label the Defendants as thieves, but rather, accused the Defendants of the crime of stealing property belonging to Intent Performance. [75-1], p. 39; *see Boler v. Mosby*, 352 So. 2d 1320, 1323 (Miss. 1977) (a customer who alleged that he was falsely accused of shoplifting meat from the defendants' store had a claim that was actionable *per se*); *Valley Dry Goods Co. v. Buford*, 75 So. 252, 254 (Miss. 1917) (holding that slander was actionable *per se* when an employee was accused of stealing $100 from the cash register where she worked, in conspiracy with someone else). The Court finds that the Defendants have stated a claim for slander *per se*. *See Winstead*, 129 So. 3d at 928.

Although these statements concerning moral turpitude and business reputation would constitute slander *per se*, the Defendants also appear to have sufficiently alleged the elements of slander. They claim "false statements were made with the purpose of harming the business of Intent Sports & Fitness," to third parties such as "gym members and potential customers." [75-1], p. 39-40. Additionally, the Defendants state that the Plaintiff and Third-Party Defendants had the

40

"intent to discredit" Intent Sports & Fitness, "harm its reputation in the community," and that the statements were "malicious, and made with actual malice." *Id.* And while "general damages are presumed to result" in a slander *per se* claim, the Defendants have averred specific damages such as the loss of "approximately 30 gym memberships, representing 50-60 members, and a monthly revenue loss estimated at $1,725." *Id.*; *see Winstead*, 129 So. 3d at 929 (citation omitted).

Based on the above allegations, the Court finds that the Defendants' slander claim in the proposed Second Amended Counterclaim is not futile, and as a result, the Defendants will be allowed to proceed with the amendment of that claim.

### 2. Libel

In Mississippi, the elements of libel are the same as those of slander. *Funderburk v. Johnson*, 935 So. 2d 1084, 1104 (Miss. Ct. App. 2006). Whereas "slander is oral or aural defamation," "[l]ibel is written or visual defamation." *Condere Corp. v. Moon*, 880 So. 2d 1038, 1043 n.2 (Miss. 2004) (citing Robert D. Sack & Sandra S. Baron, *Libel, Slander, and Related Problems* § 2.3, at 67 (2d ed. 1994)). "Mississippi law requires that a complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements." *Brune v. Takeda Pharmaceuticals U.S.A., Inc.*, No. 1:18-cv298-LG, 2019 WL 3323511, *8 (S.D. Miss. Jul. 24, 2019) (quoting *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007)). This means that the complaint must "set forth the statements, paraphrased or verbatim, that constituted [defamation]." *Chalk*, 980 So. 2d at 298.

The Defendants' allegations of libel are lacking. Although their slander claim, as discussed above, is sufficiently robust to allow amendment, the libel claim is not. The libel claim contains no particulars about allegedly defamatory statements. *See Brune*, 2019 WL 3323511, at *8; *see also*

*Cooper v. Paragon Systems, Inc.*, No. 5:08-cv-169-DCB, 2008 WL 4187942, at *4 (S.D. Miss. Sep. 5, 2008) (dismissing defamation claim where "plaintiff fails to set forth information in her complaint regarding the substance or nature of any alleged statement or how it was defamatory"). Moreover, the libel claim fails to specify "to whom the statements were directed," in contrast to the slander claim, which names specific people to whom the defamatory statements were allegedly made. *Chalk*, 980 So. 2d at 298; *see* [75-1], pps. 39-41. The Defendants merely repeat the kinds of statements alleged in support of their slander claim: that the Plaintiff and Third-Party Defendants made defamatory statements regarding the Defendants' moral turpitude and business acumen. [75-1], pps. 39-41. But unlike with their slander claim, the Defendants do not allege specific kinds of libelous statements, including the nature of such statements or to whom they were written. Absent more, the libel claim does not put the Plaintiff and Third-Party Defendants on "notice of the nature of the complained-of statements." *Brune*, 2019 WL 3323511, at *8. Because the libel claim, even as amended, would fail to state a claim, amendment is futile.

### 3. Tortious Interference with Business Relations

Under Mississippi law, a tortious interference with business relations claim has four elements:

> (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted.

*PDN, Inc. v. Loring*, 843 So. 2d 685, 688 (Miss. 2003). "[A] cause of action exists for [tortious interference with business relations] where one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result . . ." *Cenac v. Murry*, 609 So. 2d 1257, 1271 (Miss. 1992) (citing Prosser & Keeton, *The Law of Torts*, § 130, 141 (5th ed. Supp.

1988)). This cause of action differs from tortious interference with contract. While tortious interference with contract occurs when "a wrongdoer [causes] another to breach a contract which he or she has with some third person," tortious interference with business relations occurs when "a wrongdoer unlawfully diverts prospective customers away from one's business thereby 'encouraging' customers to trade with another." *Cenac*, 609 So. 2d at 1268.

The Defendants assert that the Plaintiff and Third-Party Defendants "disseminat[ed] false and defamatory statements . . . including allegations of financial instability, unethical business practices, and poor management." [75-1], p. 34. They also allege that the Plaintiff and Third-Party Defendants encouraged current and prospective customers to terminate their memberships with Defendants and that they, "in private conversations, social media posts, and other communications," spread false information and undermined the Defendants' reputation in the community. *Id.* at p. 35. These actions were taken, Defendants claim, with the intent to harm their business, in the absence of any "legitimate business" motivation. *Id.* at p. 36. Not only do the Defendants claim that these actions resulted in the loss of existing customers, but they also allege that the Plaintiff and Third-Party Defendants' actions destroyed "opportunities to secure prospective customers" due to the harm to their reputation. *Id.* at p. 35. The Court finds that, taken as true, the Defendants' tortious interference with business relations claim survives a Rule 12(b)(6) inquiry. As a result, amendment of this claim would not be futile.

The Defendants' Motion for Leave to Amend [75] is granted in part and denied in part. Having found that the Defendants' amendment of their counterclaims for slander and tortious interference with business relations would not be futile, the Court will permit the amendment of those claims. The Defendants' proposed Second Amended Counterclaim would not state a claim

for libel, however, so amendment of that claim is futile and is denied. Accordingly, the Plaintiff and Third-Party Defendants' Partial Motion to Dismiss [56] is granted in part as to the libel claim. That claim is now dismissed with prejudice.

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants Intent Sports & Fitness LLC and Marcus Moore's Motion to Compel Arbitration [49] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED Defendant Jackson, Tullos & Rogers, PLLC's Motion to Compel Arbitration [50] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED Defendant Jackson, Tullos & Rogers, PLLC's Partial Motion to Dismiss [52] is GRANTED.[13]

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff Intent Performance and Third-Party Defendants David Parkinson, Bailey Parkinson, and Lora Davis's Partial Motion to Dismiss [56] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant Intent Sports & Fitness LLC, Marcus Moore, and Katie Beth Sumrall's Second Motion for Leave to Amend [75] is GRANTED IN PART and DENIED IN PART.

THIS, the 5th day of June, 2025.

_____
**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**

---

[13] Although each of the claims subject to Jackson, Tullos & Rogers' Partial Motion to Dismiss are dismissed, Jackson, Tullos & Rogers is not dismissed from this lawsuit, as Intent Performance's legal malpractice claim remains.